IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

ANGELA WILLINGHAM,                )
                                  )
            Petitioner,           )
                                  )
      v.                          )        CV 115-092
                                  )       (Formerly CR 113-010)
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Angela Willingham filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. The motion raises six ineffective assistance of counsel claims, one of which asserts counsel failed to file an appeal after Petitioner instructed him to do so. The Court scheduled an evidentiary hearing on this "lost appeal" claim and appointed attorney David Brunk to represent Petitioner. Based on the evidence of record, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **GRANTED** as to the request for an out-of-time appeal and **DISMISSED** without prejudice as to all other claims, that the judgment in Petitioner's underlying criminal case be **VACATED**, that an identical sentence be **RE-IMPOSED**, and that this civil action be **CLOSED**.[1]

---

[1]As explained in the Court's July 14, 2015 Order, (doc. no. 6), Petitioner submitted an amended § 2255 motion to correct "miscellaneous typos." There was no substantive change between the original and amended § 2255 motions, and although this recommendation covers both the original and amended § 2255 motions, for ease of reference the Court simply refers to "the §2255 motion."

## I.    BACKGROUND

### A.    Indictment

By indictment dated January 11, 2013, a grand jury charged Petitioner with forty counts relating to fraudulent tax returns including conspiracy, theft of public funds, wrongful disclosure of individually identifiable health information, and aggravated identity theft. United States v. Willingham, CR 113-010, doc. no. 3 (S.D. Ga. Jan. 11, 2013) (hereinafter "CR 113-010").  The indictment alleged Petitioner recruited family members and friends to obtain the personal information of others, which Petitioner used to file fraudulent tax returns. Co-conspirators allegedly opened bank accounts for deposit of the fraudulent tax refunds, and remitted ninety percent to Petitioner while keeping ten percent for payment of their services.  Petitioner faced a sentence of imprisonment up to ten years on the conspiracy charge, up to ten years on each charge for theft of public funds and misuse of health information, and consecutive two-year sentences for aggravated identity theft.  Id., doc. no. 4.  The Court appointed attorney Peter Johnson to represent Petitioner.  Id., doc. no. 71.

### B.    Agreement to Plead Guilty

Pursuant to a written plea agreement, Petitioner pled guilty on September 9, 2013, to one count of conspiracy, two counts of misuse of health identifiers, and two counts of aggravated identity theft.[2]  Id., doc. nos. 321-23.  In exchange, the government agreed to dismiss thirty-five charges, not object to a two-point reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility, move for an additional one-point reduction for acceptance of responsibility, and consider filing for a downward departure under U.S.S.G. § 5K1.1 for any substantial assistance provided prior to sentencing.  Id., doc. no. 323, pp. 1-3.  Further, the

---

[2]All other co-Defendants also entered into plea agreements with the government.  CR 113-010, doc. nos. 237, 249, 252, 273, 293, 296, 310, 313, 317, 320, 326.

parties stipulated that "the loss amount is not less then [sic] $400,000 but not more than $1,000,000." Id. at 6.  Although the total loss was estimated to be more than $1,000,000, the stipulated amount of not more than $1,000,000 limited Petitioner's enhancement under U.S.S.G. § 2B1.1(b)(1) to fourteen.

The plea agreement contained a broad appeal and collateral attack waiver provision that stated in relevant part:

> [T]he defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that:  the defendant may file a direct appeal of her sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of her sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of her sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.  The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Id. at 5.  By signing the plea agreement, Petitioner attested she read and understood the plea agreement, the agreement accurately stated the representations made by her attorney and representatives of the government, and the document accurately set forth the negotiated terms and conditions of her agreement.  Id. at 14.

At the guilty plea hearing, United States District Judge J. Randal Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed she clearly understood those rights.  Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id., doc. no. 470, pp. 9-11.  Agent Roger Garland with the Internal Revenue Service

provided testimony as to the factual basis for the plea, the truth of which Petitioner confirmed. See id. at 19-23.

Judge Hall summarized the terms of the plea agreement and explained to Petitioner that she was "waiving [her] right to appeal this conviction and sentence either directly or indirectly in a post-conviction proceeding on any ground." Id. at 13. Judge Hall went over the limited situations in which Petitioner would be entitled to appeal, following which he asked Petitioner if she understood the appeal and collateral attack waiver. Id. Petitioner responded, "Yes, sir." Id.

Judge Hall also explained at the guilty plea hearing the maximum penalties for the charges to which Petitioner was pleading guilty, up to ten years on each of the first three charges and two years consecutive to any other sentence imposed for each of the two aggravated identity theft charges. Id. at 14. Moreover, Judge Hall explained the role of the Sentencing Guidelines, emphasizing that they were only advisory and not binding on him. Id. at 15-17. Furthermore, in response to a question asked by Judge Hall, Petitioner averred that no one had made her any promise or prediction that she would receive a particular sentence. Id. at 17.

Similarly, Petitioner stated that no one had "forced . . . threatened . . . or pressured [her] in any way . . . [to] plead guilty." Id. at 3. Petitioner also affirmed her understanding that by signing the plea agreement, she agreed "to be bound by all of its terms and . . . that all of the facts that are contained in the Plea Agreement are true and accurate." Id. at 12. At the conclusion of this colloquy with Petitioner, Judge Hall accepted Petitioner's guilty plea. Id. at 23-24.

## C.     Sentencing

The United States Probation Office prepared a presentence investigation report ("PSI").  The PSI reported a base offense level of six, but the adjusted offense level was thirty-four because of multiple enhancements for loss amount, number of victims, vulnerable victims, use of sophisticated means, and Petitioner's leadership role.    PSI ¶¶ 39-55. Subtracting three points for acceptance of responsibility, the total offense level was thirty-one.  Id. ¶¶ 57-59.  The PSI assigned Petitioner a criminal history category of IV.  Id. ¶ 71. The resulting Guideline range was 151 to 188 months of imprisonment, with consecutive twenty-four month terms of imprisonment for the aggravated identity theft convictions.  See id. ¶ 100.

Petitioner objected to the enhancements for the number of victims and the vulnerable victim assessment.  PSI Add.  Judge Hall overruled those two objections, as well as a double counting objection raised at sentencing.  CR 113-010, doc. no. 465, ("Sent. Tr."), pp. 3-9. Pursuant to a § 5K1.1 motion, the government requested that Judge Hall depart downward in his sentence, and Judge Hall agreed.  Id. at 10-14; see also CR 113-010, doc. no. 425.  Judge Hall sentenced Petitioner to serve a 170-month term of imprisonment, comprised of consecutive terms of ninety-four months and twenty-eight months for the first three convictions, and two, twenty-four month consecutive terms for the two aggravated identity theft convictions.  Sent. Tr., p. 14; CR 113-010, doc. no. 427.

After Judge Hall pronounced sentence, Mr. Johnson questioned the Court's decision to impose two consecutive terms for the aggravated identity theft convictions instead of running each concurrently.  Sent. Tr., p. 19.  Judge Hall acknowledged that he could have, but did not, choose to run the terms concurrently.  Id. at 19-20.  Indeed, under 18 U.S.C. §

1028A(b)(4), when sentencing an offender at the same time for multiple aggravated identity theft convictions, the judge has discretion in determining whether to run the two-year terms concurrently. Petitioner did not file an appeal.

**D.     § 2255 Proceedings**

Petitioner, however, did file the instant § 2255 motion, raising six ineffective assistance of counsel claims:

 (1) Counsel failed to conduct an independent pretrial investigation inclusive of failure to research the applicable law in this case and interview witnesses;

 (2) Counsel failed to file any substantive pretrial motions;

 (3) Counsel failed to properly advise Petitioner of the relevant circumstances and likely consequences, including her sentence exposure, of pleading guilty as opposed to proceeding to trial;

 (4) Counsel failed to object to the sentencing calculations in the PSI or present any mitigation evidence at sentencing;

 (5) Counsel failed to file a motion for reduction in Petitioner's sentence based on the sentencing disparity with other co-defendants; and

 (6) Counsel failed to file an appeal after Petitioner instructed him to do so.

**1.     Petitioner's Statements Concerning Lost Appeal Claim**

Petitioner declined to testify at the evidentiary hearing. In her motion, Petitioner states her counsel's failure to "File a Notice of Appeal deprived her of effective assistance of sentencing counsel, a fair and just sentence, and a fair and meaningful appeal." (Doc. no. 4, p. 6.) In her supporting brief, Petitioner avers she "definitively and timely notified [counsel] of her desire to appeal and he did not file the required Notice of Appeal." (Doc. no. 5, p. 30.) The Court directed Petitioner to submit a sworn statement detailing "the circumstances of her

discussions, if any, with counsel regarding an appeal, and should provide details as to the timing and manner in which she directed counsel to file a Notice of Appeal." (Doc. no. 8, p. 2.) The response from Petitioner stated only that "[o]n June 18, 2014, after [her] sentencing," she requested that Mr. Johnson file an appeal. (Doc. no. 9, p. 2.)

## 2.    Testimony of Mr. Johnson

Mr. Johnson, a highly regarded criminal defense attorney with twenty-nine years of experience, negotiated a plea agreement that stipulated a loss amount under $1,000,000 even though the estimated amount was $1,300,000, thereby removing the possibility of enhancing Petitioner's offense level by another two points. Court's recording system, *For the Record* (FTR) 10:23.28-.45; 10:26.45-:28.35.

Mr. Johnson lodged two objections to the sentence calculation in the PSI: the number of victims and the assessment as to vulnerable victim enhancement. FTR 10:10.22-:11.10; see also PSI Add. Judge Hall overruled both objections, which Mr. Johnson thought to be justified but also believed the objections were sufficiently meritorious to be "potentially appealable." FTR 10:11.20-.53. Judge Hall exercised his discretionary authority to run each identity theft sentence consecutively rather than concurrently, which resulted in four years rather than two years tacked onto the sentence for conspiracy and misuse of health identifiers. FTR 10:46.34-:47.50. Mr. Johnson thought Petitioner's sentence was harsh in light of her cooperation in providing detailed information to the government, and he expressed his concern to Judge Hall about running the identity theft sentences concurrently. FTR 10:11.58-:12.22.

Mr. Johnson recalled that, after Judge Hall announced sentence, Petitioner expressed her "displeasure or dissatisfaction" and lamented that her cooperation did not result in a more

lenient sentence. FTR 10:12.45-:13.05; 10:16.20; 10:19.15-.21; 10:36.12-:37.00. Mr. Johnson agreed that, based on her reaction, it would be rational to believe Petitioner was so dissatisfied with her sentence that she wanted to appeal. FTR 10:19.22-.35. Mr. Johnson did not consult with Petitioner about her appellate rights after sentencing. FTR 10:19.37-:20.02. Mr. Johnson did not speak with Petitioner after she left the courtroom that day and said "it may have been . . . I simply did not want to hear her *again* express her dissatisfaction." FTR 10:21.24-.46 (emphasis in original). Mr. Johnson testified unequivocally that Petitioner never instructed him to file an appeal and he never looked into the possibility of appealing the sentence. FTR 10:15.54-:16.30; 10:39.52-:40.06; doc. no. 7, Ex. A, ¶ 11. Despite his frustration with the harshness of the sentence, Mr. Johnson believed there were no meritorious grounds for an appeal. FTR 10:15.54-:16.30.

## II. DISCUSSION

Although the Court determines below that Petitioner did not instruct Mr. Johnson to file an appeal, Petitioner is entitled to relief on her lost appeal claim because Mr. Johnson did not consult with her about filing an appeal after she expressed dissatisfaction with her sentence.

### A. Petitioner's Burden Under <u>Strickland v. Washington</u>

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003); <u>United States v. Armstrong</u>, 546 F. App'x 936, 940 (11th Cir. 2013); <u>see also</u> <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 476-77 (2000) (holding that <u>Strickland</u> test applies to ineffective assistance claim alleging failure to file an appeal). Petitioner must show that

counsel was constitutionally ineffective under the two prongs of <u>Strickland</u> by proving defense counsel's performance was deficient and prejudicial.

Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Under the prejudice prong of <u>Strickland</u>, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

### B.    Petitioner Did Not Ask Counsel to File an Appeal.

The Court turns first to the deficient performance prong of the <u>Strickland</u> test to determine whether Mr. Johnson disregarded specific instructions from Petitioner to file a notice of appeal, an allegation that if true, demonstrates professionally unreasonable representation. <u>Flores-Ortega</u>, 528 U.S. at 477-78. Cases in which a criminal defendant explicitly instructs her attorney to file a notice of appeal are subject to a bright-line rule. "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." <u>Montemoino v. United States</u>, 68 F.3d 416, 417 (11th Cir. 1995). Thus, if the Court determines Mr. Johnson failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

The threshold issue relates to credibility. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." <u>United States v. Williams</u>, 731 F.3d 1222, 1230 (11th Cir. 2013) (citing <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 749 (11th Cir. 2002)); <u>see also</u> <u>United States v. Pineiro</u>, 389 F.3d 1359,

1366 (11th Cir. 2004) (recognizing credibility determinations are within province of the factfinder); Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004) (recognizing court's opportunity to observe and study witnesses to make credibility determination concerning testimony on ineffective assistance claim). In making its credibility determination, the Court must take into consideration not only the interests of the witness, but also "the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand." Ramirez-Chilel, 289 F.3d at 749, 750 (citation omitted).

Here, the Court credits the testimony of Mr. Johnson over the non-specific, self-serving written submissions from Petitioner. Mr. Johnson's testimony was candid, detailed, and consistent. Even when faced with uncomfortable questioning, Mr. Johnson answered truthfully and did not waiver in his testimony that Petitioner never directed him to file an appeal.

In contrast, Petitioner's written submissions have not been tested by cross-examination, and Petitioner never provided specific information about when, where, why, or how she made her alleged request for an appeal to Mr. Johnson. Petitioner vaguely alleges that "[o]n June 18, 2014, after [her] sentencing," she requested that Mr. Johnson file an appeal. (Doc. no. 9, p. 2.) This is a far cry from the detailed information the Court sought when it directed Petitioner to submit a sworn statement detailing "the circumstances of her discussions, if any, with counsel regarding an appeal" and to include "details as to the timing and manner in which she directed counsel to file a Notice of Appeal." (Doc. no. 8, p. 2.) Even after hearing Mr. Johnson's testimony at the evidentiary hearing, Petitioner refused to provide anything more detailed in rebuttal. Nor can the Court overlook that Petitioner has

amassed multiple federal felony convictions, (see PSI ¶ 67), and admitted to extensive participation in federal tax crimes of dishonesty causing losses of at least $1,000,000.

In considering Mr. Johnson's tested, unwavering testimony against Petitioner's untested, self-serving statements that are devoid of any details concerning her supposed request for an appeal, the Court finds Petitioner never instructed Mr. Johnson to file an appeal.

### C.    Mr. Johnson Breached His Duty To Consult Regarding An Appeal When Petitioner Reasonably Demonstrated Her Interest In Appealing, Resulting in Prejudice to Petitioner.

Even though the Court finds Petitioner never instructed Mr. Johnson to file an appeal, the inquiry does not end there. All defense counsel have a general duty to consult about an appeal, including informing a client about the right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal. Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007). Despite this general duty, the Supreme Court has specifically declined to adopt "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Flores-Ortega, 528 U.S. at 480. Rather, taking into consideration the totality of the circumstances, counsel has a duty to consult regarding an appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that [s]he was interested in appealing." Id.

With respect to the instant motion, it is undisputed Mr. Johnson did not consult with Petitioner about an appeal after her sentencing. The determinative question, therefore, is

whether there was a duty to consult under the circumstances. The following passage

provides important guidance from the Supreme Court concerning this determination.

> Although not determinative, a highly relevant factor in this inquiry will
> be whether the conviction follows a trial or a guilty plea, both because
> a guilty plea reduces the scope of potentially appealable issues and
> because such a plea may indicate that the defendant seeks an end to
> judicial proceedings. Even in cases when the defendant pleads guilty,
> the court must consider such factors as whether the defendant received
> the sentence bargained for as part of the plea and whether the plea
> expressly reserved or waived some or all appeal rights.

Id.

The Court concludes Mr. Johnson did have a duty to consult with Petitioner about an

appeal because she reasonably demonstrated her interest in appealing. It is undisputed that

Petitioner immediately expressed dissatisfaction with her sentence to Mr. Johnson while still

in the courtroom, including statements of surprise and disappointment that her cooperation

did not result in leniency. Indeed, Mr. Johnson believes he did not go to see Petitioner after

she left the courtroom on the day of sentencing because he "simply did not want to hear her

*again* express her dissatisfaction." FTR 10:21.24-.46 (emphasis in original).

That Mr. Johnson did not see any viable appellate issues does not vitiate the duty to

explain the appellate process, describe the advantages and disadvantages of filing an appeal,

and explain his obligation to file an appeal if Petitioner so desired. See Thompson, 504 F.3d

at 1207. Nor does the fact that Petitioner signed a plea agreement with an appeal waiver

mean that Mr. Johnson was automatically relieved of his obligation to consult with

Petitioner. See Gomez-Diaz v. United States, 433 F.3d 788, 793 (11th Cir. 2005) (ruling that

if counsel failed to fulfill duty to determine client's wishes about appealing, prejudice is

presumed and entitles petitioner to an out-of-time appeal, regardless of whether there are

meritorious issues fitting exceptions to appeal waiver). While the government would certainly be free to raise the waiver provision in the plea agreement if an appeal were filed, Petitioner would also be free to argue why she believes the waiver is somehow invalid or simply not applicable to her appellate claims.

In sum, the Court finds Petitioner has satisfied her burden of showing she reasonably demonstrated an interest in appealing, and therefore Mr. Johnson had a constitutionally imposed duty to consult with Petitioner about filing an appeal. Therefore, the Court also concludes Petitioner met her burden of showing the requisite prejudice under Strickland because as a result of the lack of consultation, Petitioner lost her right to appeal. See Thompson, 504 F.3d at 1208.

### D.     Procedure for Restoring Petitioner's Appellate Rights

When a court determines that an out-of-time appeal in a criminal case is the proper remedy in a § 2255 proceeding, the Eleventh Circuit directs that the remedy should be effected in the following way:

> (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is ten days, which is dictated by Rule 4(b)(l )(A)(i).

United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000). The Court recommends these procedures to re-institute Petitioner's right to appeal. Unless Petitioner elects to retain her own counsel for the appeal, the Court recommends appointment of appellate counsel prior to reimposing sentence. After reimposition of Petitioner's sentence, Petitioner will have fourteen days in which to file a notice of appeal.

In light of the recommendation that Petitioner be allowed to file an appeal, the Court declines to address Petitioner's remaining ineffective assistance of counsel claims and recommends that those claims be dismissed without prejudice. See United States v. Wiles, 563 F. App'x 692, 695 (11th Cir. 2014). For example, although the government has emphasized in these proceedings that Petitioner agreed to an appeal waiver as part of her plea agreement, whether the government invokes the waiver and/or the Eleventh Circuit would enforce it is an open question. What is known, however, is that at least some of Petitioner's remaining claims, for instance her challenges to the Guideline calculations, are the type of claims that may be brought on direct appeal. See Martin v. United States, 81 F.3d 1083, 1084 (11th Cir. 1996).

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **GRANTED** as to the request for an out-of-time appeal and **DISMISSED** without prejudice as to all other claims, that the judgment in Petitioner's underlying criminal case be **VACATED**, that an identical sentence be **RE-IMPOSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 11th day of February, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA